**IMPORTANT NOTICE: Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court SHALL ONLY be by document filed with the Clerk of Court.**

RECEIVED
IN ALEXANDRIA, LA

DEC 16 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TERRANCE WAYNE LUKE,<br>Petitioner | CIVIL ACTION<br>SECTION "P"<br>NO. 1:09-CV-01932 |
| VERSUS | |
| WARDEN, WINN CORRECTIONAL CENTER,<br>Respondent | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, in forma pauperis, by pro se petitioner Terrance Wayne Luke ("Luke"). Luke is contesting his 2001 conviction by a jury in the Louisiana Eighth Judicial District Court in Winn Parish, on one count of possession of a firearm by a convicted felon; Luke was sentenced to fifteen years imprisonment.

Luke raises the following grounds for habeas relief:

1. Despite the prosecution's perjured testimony, the evidence produced by the state was still insufficient to prove the possession of a firearm by a convicted felon.

2. Luke was denied his right to be tried by a fair and impartial jury where members of his jury worked inside the parish courthouse and/or at the correctional center where he was formerly housed, and the jury was released on recess without being given a cautionary instruction not to discuss the case.

3. Luke had ineffective assistance of counsel where his

counsel failed to investigate the facts leading up to his arrest, failed to consult with Luke in preparation of a defense, and failed to object to the confusing jury instruction.

The Respondent answered the complaint (Doc. 11) and Luke filed a reply (Doc. 12). Luke alleged and the Respondent admits that Luke has exhausted his state court remedies.

Luke's habeas petition is now before this court for disposition.

## Facts

The facts of this case, as set forth by the Louisiana Second Circuit Court of Appeal at State v. Luke, 40,405-KA 917 (La. App. 2d Cir. 2005), 917 So.2d 1226, writ den., 2006-KO-0821 (La. 2006), 939 So.2d 356, are as follows:

> "On May 31, 2001, the defendant, apparently an escapee from Jackson Parish, emerged from the woods while carrying a sawed-off shotgun. He approached Jack Ross, who was on his back porch. Luke requested water and something to eat, remaining on the porch for an hour talking to Mr. and Mrs. Ross. After realizing that she had seen the defendant on television, Mrs. Ross went to a neighbor's house and called the police. When the police arrived, the defendant grabbed the gun and fled back into the woods."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of

the habeas corpus petition. <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33 (5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. Martin, 246 F.3d at 476, and cases cited therein.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmlessness determination itself was unreasonable. Mitchell v. Esparza, 540 U.S. 12, 124 S.Ct. 7 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619,

113 S.Ct. 1710 (1993), whether or not the state appellate court recognized the error and reviewed it for harmlessness. <u>Fry v. Pliler</u>, 551 U.S. 112, 127 S.Ct. 2321 (2007). The Court should treat the error as if it affected the verdict, and the State bears the burden of persuasion as to the harmlessness of the error. <u>Fry</u>, supra.

Law and Analysis

Ground No. 1 - Insufficient Evidence

Luke contends that, despite the prosecution's perjured testimony, the evidence produced by the state was insufficient to prove possession of a firearm by a convicted felon. Luke alleges that, at his trial, the prosecution failed to prove he was the same Terrance Wayne Luke who had previously been convicted of manslaughter, alleging a different birth date of that person. Luke contends that Chief Deputy Gregory E. Davies of the Winn Parish Sheriff's Office gave perjured testimony when he stated he had known Luke for more than twenty years, that he used to manage the Winnfield High School basketball team when he was in high school, that he was the same Terrance Luke who was convicted in 1991 of manslaughter, and that, in 1992, Davies had gone to Winn Correctional Center where Luke was serving his sentence for manslaughter, picked up Luke, and brought Luke to the parish jail (Ex., Trial Tr. pp. 95-96).

In order for an allegation of perjured testimony to constitute

5

a due process violation, a petitioner must show that the prosecution knowingly presented materially false evidence to the jury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990), citing, United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989). Luke makes only conclusory allegations of perjury, and does not suggest that he has any evidence to support his claims. Moreover, Luke has not alleged or shown that the prosecutor was aware of and knowingly presented perjured testimony at Luke's trial. Therefore, Luke's claims of perjury by Deputy Davies are unsupported and meritless.[1]

Moreover, it is noted that, at his sentencing, Luke pleaded guilty to the habitual offender bill on May 14, 2002, specifically admitting he was the same person who had previously been convicted of manslaughter (Doc. 5, Ex.; Doc. 11, Vol. 1, p. 148, et seq.). A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction. Nothing remains but to give judgment and determine punishment. Gilliard v. Scroggy, 847 F.2d 1141, 1143 (5th Cir. 1988), cert. den., 488 U.S. 1019, 109 S.Ct. 818 (1989), quoting Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711 (1969). If a defendant understands

---

[1] It is noted that Juror Johnson, who was employed at the time of trial as a correctional officer by Corrections Corporation of America at Winn Correctional Center in Winnfield, Louisiana (Ex. Voir Dire pp. 25, 33), testified during voir dire that he knew Luke because he had been incarcerated in the Winn Correctional Center (Ex. Voir Dire pp. 16, 33-34).

the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty without being coerced to do so, the guilty plea and any concomitant agreement will be upheld on federal review. Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980), modified, 646 F.2d 902 (5th Cir.), cert. den., 454 U.S. 840, 102 S.Ct. 148 (1981). Once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983), cert. denied, 466 U.S. 906, 104 S.Ct. 1685 (1984). Also, Hill v. Lockhart, 474 U.S. 52, 56-57, 106 S.Ct. 366 (1985); Barrientos v. United States, 668 F.2d 838, 842 (5th Cir. 1982).

The transcript of Luke's guilty plea to being a second felony offender clearly establishes that Luke admitted he was the same Terrance Luke who was convicted of manslaughter in October 1991 (Doc. 5, Ex.; Doc. 11, Vol. 1, p. 148, et seq.). Therefore, Luke is estopped by his own admission from now denying that he was the same person.

This ground for relief is meritless.

Ground No. 2 - Jury Bias

Next, Luke contends he was denied his right to be tried by a fair and impartial jury where members of his jury worked inside the parish courthouse and/or at the correctional center where he was formerly housed, and the jury was released on recess without being given a cautionary instruction not to discuss the case.

7

The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law. <u>Solis v. Cockrell</u>, 342 F.3d 392, 395 (5th Cir. 2003), cert. den., 540 U.S. 1151, 124 S.Ct. 1149 (2004). The question of a challenge for bias (cause) is a factual issue. <u>Wainwright v. Witt</u>, 469 U.S. 412, 429, 105 S.Ct. 844, 855 (1985). Therefore, judgments made at trial about a juror's ability to abide by the oath and the court's instructions, notwithstanding moral convictions, are accorded a presumption of correctness under Section 2254(d). <u>Nethery v. Collins</u>, 993 F.2d 1154, 1158 (5th Cir. 1993), cert. den., 511 U.S. 1026, 114 S.Ct. 1416 (1994).

A criminal juror's association with law enforcement duties must be closely scrutinized by the trial court. <u>State v. Valentine</u>, 464 So.2d 1091, 1095 (La. App. 1st Cir.)(trial did not err in accepting juror who was a correctional officer since she testified she could be fair and unbiased), citing <u>State v. Chapman</u>, 410 So.2d 689, 696 (La. 1981). La.C.Cr.P. art. 797 states in part:

> "The state or the defendant may challenge a juror for cause on the ground that:...
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

Juror Johnson, who was employed at the time of trial as a correctional officer by Corrections Corporation of America at Winn

Correctional Center in Winnfield, Louisiana (Ex. Voir Dire pp. 25, 33), testified that he knew Luke because he had been incarcerated in the Winn Correctional Center (Ex. Voir Dire pp. 16, 33-34). Johnson also testified that he did not have any dealings with Luke that would prevent him from being fair (Ex. Voir Dire p. 34) and that he could give Luke a fair trial and decide the case based solely on the evidence presented, and not on the fact that he had been an inmate (Ex. Voir Dire pp. 16-17).

Juror Johnson was accepted as a juror by both the state and the defense (Ex. Voir Dire p. 46). Since there was no challenge by either the State or the defendant to Johnson, the trial judge did not err in accepting him as a juror. The undersigned notes, that, had there been a challenge for cause to Johnson and had the trial judge refused to accept the challenge, Luke would not prevail on habeas since, given the fact that Johnson testified he could be fair to Luke, there would not be a clear abuse of the court's exercise of its discretion. See Valentine, 464 So.2d at 1095.

Juror Hodnett testified that she worked in the tax assessor's office (Ex. Voir Dire p. 58). Juror Hodnett initially testified she did not know if she could judge Luke because she did not like to judge people, but later stated she could uphold her responsibility to weigh the evidence and make a decision (Ex. Voir Dire pp. 66-67). Juror Hodnett was also accepted by both the State and the defendant (Ex. Voir Dire p. 80). Since there was no

9

challenge to Juror Hodnett, the trial judge did not err in accepting her as a juror. Had there been a challenge to Hodnett which the trial judge overruled, the undersigned finds there would be no abuse of the trial judge's discretion. Employment in the tax assessor's office (which apparently is located in the courthouse in that parish) does not, by itself, reflect a reason for bias and does not fall within any ground for a challenge for cause under La.C.Cr.P. art. 797. Moreover, Hodnett's initial reservation about serving as a juror was in Luke's favor rather than against him.

Luke also contends the trial judge erred in releasing the jurors during trial without a cautionary instruction to not read about or listen to stories about the case. However, Luke has not alleged that anyone read about or listened to a discussion or news about the case and, therefore, has not alleged any specific prejudice arising from the alleged deficiency. Moreover, the record does not indicate that the jurors were ever released to go about their business. The jury was picked and seated after lunch time, the evidence was presented, and a verdict was returned all on the afternoon of February 26, 2002 (Ex. Vol. 1 of 3, pp. 4-6). Although the court recessed occasionally, it does not appear that the jury ever left the courthouse. Therefore, Luke has not shown that the judge failed to instruct the jury appropriately or that his jury was biased.

This ground for relief is meritless.

Issue No. 3 - Ineffective Assistance of Counsel

Finally, Luke contends he had ineffective assistance of counsel due to his attorney's failure to investigate the facts leading up to his arrest, failure to consult with him in preparation of a defense, and failure to object to the confusing jury instructions.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only highly deferential judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases

cited therein.

Luke contends his attorney failed to investigate the offense and thus failed to discover that, although Luke had escaped from the parish jail in Jonesboro, Louisiana, there had not been any reports of any burglaries or robberies through which Luke could have obtained a sawed-off-shotgun. Luke further argues that, had his attorney contacted him prior to trial, he could have told him that the deputy's statement, concerning the gun was found in the trunk of the vehicle Luke was caught riding in, was untrue. Luke alleges he was found in his cousin's van and that the shotgun was not in the van with them. Luke contends his attorney failed to object to Deputy Davies's hearsay testimony on the issue.

First, the fact that a(n illegal)[2] sawed-off shotgun had not been *reported* stolen does not mean that it had not been stolen by Luke. Also, the homeowners, Jack and Minnie Ross, testified that Luke sat on their porch with a sawed-off shotgun in his had (Ex., Trial Tr. pp. 70-73, 75, 77-78). Deputy Winder testified that he saw Luke run from the Ross's front porch into the woods with what appeared to be either a gun in his hand (Ex., Trial Tr. pp. 91-92).[3] Deputy Davies testified, when the sheriff's office received a call informing them that Luke was at the Jack Ross home with a

---

[2] See La.R.S. 40:1781, et seq. and 18 U.S.C. § 922.

[3] There are three page numbers on each page. The page number used herein is taken from the bottom right side of the page.

12

shotgun, he went there and saw Luke seated on the side porch with the two elderly people who lived there (Ex., Trial Tr. pp. 97-98). Deputy Davies testified that he made eye contact with Luke and recognized him, then Luke ran into the woods carrying what looked like a sawed-off shotgun (Ex., Trial Tr. pp. 98-99). Deputy Davies explained he may have gotten a better look at Luke than Deputy Winder because he was still sitting in the car when Winder was already out and running (Ex., Trial. Tr. p. 101). Deputy Davies then gave the hearsay testimony which defense counsel did not object to, "[O]ther law enforcement agents have told me that a person that had picked him up had given him a ride had recovered a weapon from their car that was not theirs" (Ex., Trial Tr. p. 103).

In light of the fact that other witnesses testified that Luke was carrying a sawed-off shotgun, Luke was not prejudiced by Deputy Davies' hearsay testimony. Moreover, the hearsay nature of his testimony was clear and reinforced by his testimony that he did not see the gun allegedly recovered from the vehicle. Given the testimony by the Rosses and Deputy Winder, Luke has not shown that an objection to Davies' hearsay testimony would have made any difference in his trial or that there is a reasonable probability that, but for defense counsel's failure to object, the result of the proceeding would have been different. In this case, the issue of whether the gun was found in the vehicle with Luke when he was arrested is not particularly relevant to the issue of whether he

was a convicted felon in possession of a firearm. Therefore, Luke has not shown that he had ineffective assistance of counsel in this respect.

Finally, Luke contends his attorney failed to object to the confusing jury instructions. Luke points specifically to the instructions concerning reasonable doubt, where the trial judge instructed the jury to consider only the evidence and testimony admitted and not evidence and testimony which was not admitted or which the jury was instructed to disregard (Ex., Trial Tr. p. 116). Luke contends this instruction was confusing, since the shotgun he was charged with possessing and the Boykinization transcript[4] were never introduced into evidence. Luke contends the judge effectively instructed the jury not to consider the shotgun and the Boykinization transcript.

However, eye witnesses to the event testified that Luke possessed a sawed-off shotgun. Therefore, the witness testimony was evidence of Luke's possession of the gun which supported his conviction.

Moreover, the Boykinization transcript was introduced and accepted into evidence (Ex., Trial Tr. pp. 66-69). Therefore, Luke's argument as to the transcript is groundless.

---

[4] Luke is referring to his Boykinizaton at his 1991 sentencing for manslaughter (Ex., Trial Tr. p. 65-69). The State introduced the transcript to prove Luke had a prior final felony conviction.

This ground for relief is also meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Luke's petition for habeas corpus relief be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within *fourteen (14) days* following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order

15

adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on this 15th day of December 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE